-PS-o-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL WALSH,

    Plaintiff,

   -v-

GLENN GOORD, Commissioner,
JOHN R. PATTERSON, Exec. 1st Dep. Comm.,
LUCIEN LECLAIRE, JR., Dep. Comm. Of Oper.,
DONALD SELSKY, Dir. Special Housing,
JAMES WALSH, Warden Sullivan Prison,
J. T. SMITH, Warden Shawangunk,
JAMES CONWAY, Warden Attica Prison,

    Defendants.

**DECISION AND ORDER**
07-CV-0246Sr



---

## INTRODUCTION

Plaintiff, Michael Walsh, an inmate of the Attica Correctional Facility ("Attica"), has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2). He has also filed a motion for the appointment of counsel (Docket No. 3) and a motion for a preliminary injunction requesting that the Court order that he be transferred from Attica because he has been assaulted by other inmates and was recently attacked and raped. (Docket No. 4). For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, his motions for counsel and a preliminary injunction are denied without prejudice, several of his claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and unless plaintiff files an amended complaint as

directed below, the remaining claims will be dismissed with prejudice pursuant to §§ 1915(e)(2)(B) and 1915A.

## DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis*. Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004). "Section 1915 governs proceedings *in forma pauperis,* while § 1915A applies to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid a filing fee." *Id.*

In *Shakur*, the Second Circuit stated that "[n]o portion of a complaint stating 'a claim upon which relief may be granted' should be dismissed by the screening mechanism of § 1915A. This ground-legal sufficiency-'authorizes a court to dismiss a claim on the basis of a dispositive issue of law.'" *Shakur*, 391 F.3d at 112 (quoting *Neitzke v. Williams,* 490 U.S. 319, 326 (1989) (discussing standard of Federal Rule of Civil Procedure 12(b)(6)).

Further, in evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "The settled rule is that a complaint should not be dismissed for failure to state a

2

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004) (citations and internal quotation marks omitted) (applying both §§ 1915 and 1915A). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*" *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Generally, therefore, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999) (*per curiam* )). Nevertheless, District Courts are not required to direct "'that process be served or that the plaintiff be provided an opportunity to respond before [the] dismissal' of a frivolous claim." *Shakur*, 391 F.3d at 113 (quoting *Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (per curiam)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that several of plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may

be granted.  In addition, the Court finds that the remainder of plaintiff's claims must be dismissed unless plaintiff files an amended complaint as directed below.

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint is essentially a lengthy, conclusory and, at times, arguably incredible or delusional diatribe about a far-ranging conspiracy among defendants Glenn Goord, the former Commissioner of the New York State Department of Correctional Services, John Patterson, former Executive First Deputy Commissioner of DOCS and Lucien LeClaire, current or former Deputy Commissioner of Operations of DOCS, to have plaintiff transferred to and murdered at Attica because of a New York State Legislative Budget and Prison Reform Bill ("Reform Bill") that plaintiff authored in 2003, while he was incarcerated at the Sullivan Correctional Facility ("Sullivan").  The Reform Bill, *inter alia*, accused Goord and Patterson of stealing and misappropriating millions of dollars of DOCS' money for the "Presidential Campaign" of then Governor George Pataki.  As alleged in the complaint, plaintiff, in June 2004, sent this Reform Bill to a "female lover" who was a Second Circuit Court of Appeals Clerk's Office employee, who then forwarded it to a New York State Senator as requested by plaintiff.  The Reform Bill was also forwarded to Goord or Patterson by this court employee or one of her supervisors because of what plaintiff states were the romantic overtones set forth in the cover letter, which was discovered by the supervisor who plaintiff believes caused the Reform Bill to be forwarded to Goord or Patterson. (Complaint, Attached Pages, Statement of Facts, pp. 1-4).

Upon receipt of the Reform Bill, Goord, Patterson and LeClaire then, with the conspiratorial aid of the other defendants Donald Selsky, Director the Special Housing,

James Walsh, Superintendent of the Sullivan Correctional Facility, J. T. Smith, Superintendent of the Shawangunk Correctional Facility ("Shawangunk"),[1] and James Conway, Superintendent of the Attica Correctional Facility, caused plaintiff to be, *inter alia*, (1) transferred to Attica in January 2005, (2) exposed or identified to the prison population at Attica as a child molester and rapist, and an "administrative snitch, (3) "set up" by the filing of false misbehavior reports and sham Tier III Superintendent Disciplinary Hearings, and (4) assaulted and raped by other inmates at different times between October 2005 and January 2007.

### 1. Procedural Due Process Claim

The Court, in attempting to liberally construe the complaint, notes that the only claim that *may* arguably be sufficiently pled in the complaint, and survive review under § § 1915(e)(2)(B) and 1915A, is a procedural due process claim against Selsky who affirmed a Tier III Superintendent's Hearing Disposition that was issued on or about June 19, 2006 which found plaintiff guilty of making threats to Goord, Patterson and LeClaire based on a letter plaintiff forwarded to Goord threatening Goord and the others that if he was not transferred to Wende he would need to take some action. (Complaint, Attached Pages, "The Incidents," Fact "6" through "8", pp. 10-12). The Hearing Officer's disposition for the violation of Rule 102.10 (threats) was 90-days keeplock, and 90-days loss of packages, commissary, and phone privileges. (Complaint, Attached Pages, The Incidents, Fact "7," p. 11, and Exh.--Transcript of Disciplinary Hearing, p. 20). Plaintiff claims that Selsky

---

[1]In June 2004 when plaintiff first forwarded the Reform Bill to his "female lover," plaintiff was incarcerated at the Sullivan Correctional Facility and was later transferred to Shawangunk in September 2004. (Complaint, Attached Pages, "The Incidents," Fact "2" through "4", pp. 4-6).

affirmed the disposition despite plaintiff's claims that the Hearing was untimely held, the Hearing Officer was biased, he was denied his request to call witnesses, including Goord, Patterson and LeClaire, and he was denied a request for the production of letters he claimed were relevant to the Hearing. *See Wolff v. McDonnell,* 418 U.S. 539 (1974); *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

This claim too, however, does not allege sufficient facts which if proven would establish a due process violation because plaintiff has not alleged that his 90-days keeplock was an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. Plaintiff, however, will be afforded an opportunity to amend the complaint to sufficiently allege a due process claim under *Sandin.*

As a result of the disciplinary hearing, plaintiff received 90-days keeplock and loss of privileges. To the extent that plaintiff's complaint alleges that Selsky, in affirming the disposition, deprived him of a liberty interest in violation of his constitutional rights, plaintiff must demonstrate that he possessed a protected liberty interest and that he was deprived of that interest without due process. *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996); *Frazier v. Coughlin,* 81 F.3d 313, 316 (2d Cir. 1996). Therefore, the Court must first determine whether plaintiff can establish a protected liberty interest, and, if plaintiff has not established such an interest, his claim must be dismissed. *See Frazier,* 81 F.3d at 317-318. In order to establish the existence of a protected liberty interest, plaintiff must (1) "establish that the confinement or restraint complained of creates an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life;'" *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin,* 515 U.S. at 484 (1995)), and (2)

"establish that 'the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint,'" *id.* (quoting *Frazier*, 81 F.3d at 317).

In order to make this showing, a plaintiff must demonstrate that the conditions under which he was held in keeplock differed dramatically from the basic conditions of his incarceration. "After *Sandin*, in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment." *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). The circumstances that the Court must examine include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and ... the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998). The Second Circuit has stated that "[t]he longest confinement in normal SHU conditions that we have ruled was not shown to meet the *Sandin* standard was 101 days." *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (quoting *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)). In *Colon*, the Second Circuit also noted that:"[we] do not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in *Sealey* to constitute an atypical and severe hardship under *Sandin*." 215 F.3d at 232 n. 5. District Courts are "instructed . . . to develop detailed factual records 'in cases challenging SHU confinements of durations within the range bracketed by 101 days and 305 days.'" *Colon*, 215 F.3d at 232 (footnote omitted). However,

> in cases involving shorter periods of segregated confinement
> where the plaintiff has not alleged any unusual conditions, the

> district court need not provide such detailed explanation of its reasoning. For example, in *Arce v. Walker*, 139 F.3d 329 (2d Cir. 1998), [the Second Circuit] considered *Brooks* and *Miller [v.Selsky*, 111 F.3d 7, 9 (2d Cir. 1997)] and held that the district court had adequately specified its findings by stating that the confinement at issue in *Sandin* was 30 days, and that the 'combined effects of [the plaintiff's 18] day segregation plus exercise deprivation and verbal harassment' did not distinguish the plaintiff's circumstances from *Sandin*. *Id*. at 336 (quoting *Arce v. Walker*, 907 F.Supp. 658, 662 n. 3 (W.D.N.Y.1995))."

*Hynes v. Squillance*, 143 F.3d 653, 657 (2d Cir. 1998).

While there is no bright line below which the Court need not consider the circumstances of the punishment, " 'the decisions in the Second Circuit are unanimous that keeplock ... of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin.' " *Smart v. Goord*, 441 F.Supp.2d 631, 640 (S.D.N.Y.2006) (quoting *Williams v. Keane*, No. Civ. 95-0379(AJP)(JGK), 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases); *see also, Pettus v. Geaver,* No. 04-CV-228 (LEK/DRH), 2007 WL 295313, at *2 (N.D.N.Y., January 10, 2007) ("although [plaintiff] contends that he was deprived of shower[s], recreation, toothbrush and toothpaste for 21 days, he has failed to demonstrate that given the limited period of deprivation, these conditions gave rise to a protected liberty interest") (citation and internal quotations omitted);*Garcia v. Miller*, 201 F.3d 431 (2d Cir. 1999) (unpublished disposition); *Davis v. State of New York*, No. 99-CV-0307H, 1999 WL 1390247, at *3-4 (W.D.N.Y. December 14, 1999) (thirty days in keeplock with loss of telephone, commissary and package privileges); *Rodriguez v. McGinnis*, 1 F.Supp.2d 244, 248 (S.D.N.Y. 1998) (17 days in keeplock).

Moreover, keeplock confinement is less restrictive than the SHU confinement imposed for thirty days in *Sandin*. *Sandin*, 515 U.S. at 475-76. While package, telephone

and commissary privileges may be suspended, and the inmate is confined for 23 hours each day, the privileges of an inmate in disciplinary keeplock are not otherwise more limited than those of prisoners confined in keeplock for administrative detention or protective custody. *McIntosh v. Daddario*, No. 94 CIV. 6709(RPP), 1998 WL 118156, at *4 (S.D.N.Y. March 17, 1998) (holding that inmate's disciplinary keeplock confinement for 45 days, with loss of package and phone privileges after inmate was found guilty of violating terms of work release program, did not implicate a liberty interest); *Reaves v. Williams*, No. 95 CIV. 0281 (DC), 1997 WL 10132 at *5 (S.D.N.Y. January 10, 1997) (69 days served in keeplock, of a 90-day sentence); *and see Saulter v. Hanslmaier*, No. 94 CIV. 6855(JFK), 1997 WL 177887, at *2 (S.D.N.Y. April 14, 1997) (taking into account fact that keeplock inmates were housed in cells identical to those used in general population, with greater freedom of movement than SHU).

Plaintiff does not claim--or it is not clear from the complaint that he does claim--that the duration of his sentence was affected by the outcome of his disciplinary hearing, or that the terms of his punitive confinement signaled a "dramatic departure" from the basic conditions of prison life. Plaintiff's complaint contains no allegation, other than the length of the confinement and maybe the purported conspiracy, that would indicate that his 90-day keeplock confinement was "atypical" or "significant," and therefore he has failed to state a due process claim. *See Barclay v. New York*, No. 9:02-CV-1463, 2007 WL 806126, at *8 ( N.D.N.Y., March 19, 2007) (90-day keeplock and loss of privileges without any evidence upon which a jury could find that keeplock confinement created an "atypical and significant deprivation" failed to establish a liberty interest);*see also Garcia v. Miller*,

9

201 F.3d 431 (2d Cir. 1999) (no liberty interest established where plaintiff received seven-day and thirty-day terms of keeplock); *Sullivan v. Schweikhard*, 968 F.Supp. 910, 913 (S.D.N.Y. 1997) (no protected liberty interest found where plaintiff was confined to keeplock for nine days).

Accordingly, plaintiff will be provided an opportunity to amend his complaint against Selsky to allege that his confinement was atypical or significant.[2]  Plaintiff is directed to amend his original complaint to detail the conditions of his keeplock confinement and to specify the liberty interest of which he was allegedly deprived by Selsky's actions.  Plaintiff is directed to the cases cited above, specifically, *Sandin*, 515 U.S. at 475-76 and *Barclay*, 2007 WL 806126, at *8, in order that he may properly understand what must be alleged in the amended complaint to state an actionable due process claim.[3]

---

[2] None of the other defendants are alleged to be sufficiently personally involved in the denial of due process arising out of the June 19, 2006 Tier III Superintendent's Hearing Disposition and the complaint therefore fails to state a claim on which relief can be granted against them.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  As noted below, his claims of a conspiracy between Goord, Patterson and LeClaire, with the assistance of Selsky and the three Superintendents of Sullivan, Shawangunk and Attica--Walsh, Smith and Conway--to set him up are simply too conclusory to state an actionable claim of a due process violation against the defendants other than Selsky, who is alleged to have been personally involved inasmuch as he affirmed the Hearing Officer's Disposition.  If plaintiff can allege in factual non-conclusory terms that other persons were personally involved in the alleged due process violation, plaintiff's amended complaint may include them as defendants with respect to the due process claim arising out of the June 19, 2006 Disposition. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

[3] The complaint includes many other references to Tier III or other disciplinary hearings which plaintiff claims were shams or he was set up for, but the complaint does not, in any way, set forth any facts which would state a claim against any of the defendants named herein or anyone else who may be liable for violations of plaintiff's due process rights arising out of those hearings.  If plaintiff wishes to include other claims of due process violations, other than the one against Selsky based on the June 19, 2006 Tier III Superintendent's Hearing, he may include them in the amended complaint must he must set forth at the very least:(1) the date of the misbehavior report and the violations charged; (2) the date of the Hearing; (3) the individuals who were personally involved in the alleged due process violation; (4) the factual basis of plaintiff's claim that he was denied due process at the Hearing; (5) the Hearing Disposition; and (6) the date and disposition of any appeals from the Hearing Disposition.

### 2. Conspiracy Claims

As noted, the gist of plaintiff's complaint, which the Court finds to be, at best, baseless, and, at worst, delusional, is an alleged conspiracy among Goord, Patterson and LeClaire, and the three Superintendents at the correctional facilities where plaintiff has been incarcerated since he authored the Reform Bill--Walsh, Smith and Conway--who enabled Goord, Patterson and LeClaire to carry out their conspiratorial acts to have plaintiff murdered and to set him up. Plaintiff's claims the conspiracy is a result of Goord's receipt of plaintiff's Reform Bill which accused Goord and Patterson of stealing and misappropriating millions of dollars to fund Governor Pataki's Presidential Campaign. The Reform Bill was allegedly sent to Goord by plaintiff's female lover or her supervisor at the Second Circuit. In essence, plaintiff alleges that the defendants have conspired to have him killed, assaulted and raped, and to "set him up" by the fabrication of misbehavior reports and the holding of sham disciplinary hearings because of the Reform Bill he authored.

Initially, the Court notes that any and all conspiracy claims must be dismissed with prejudice because they are both wholly conclusory, *see, e.g., Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (citing *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857 (1983)), and factually frivolous, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

"A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss," *Sommer*, 709 F.2d at 175; *see also Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993), and thus a

plaintiff may not rely on mere hope that further evidence will develop to support his claim of conspiracy. *Leon*, 988 F.2d at 311. Instead, a plaintiff must allege specific facts in his complaint to support his allegations of a conspiracy. *Id.* at 311 (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985) ("'[W]here a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment'") (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981)).

Thus, in order to state a cognizable claim that two or more defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights, plaintiff must allege facts sufficient to establish an agreement among the alleged conspirators. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied*, 506 U.S. 819 (1992); *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988). While a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy." 2A Moore's Federal Practice ¶ 8.17[6], at 8-109 to 8-110 (2d ed. 1992). Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights may properly be dismissed. *Leon*, 988 F.2d at 311.

Here, plaintiff has alleged virtually no facts in support of his contention that the defendants' actions with respect to his transfer to Attica, the assaults and rape at Attica and the false misbehavior reports and sham hearings were motivated and caused by a conspiracy to murder plaintiff due to his authoring the Reform Bill back in 2003. While plaintiff certainly appears to believe such a conspiracy exists and sets forth an

"interesting"scenario as to why he may have suffered as he claims he has at Attica, he has not set forth anything more than vague and conclusory allegations of a conspiracy. The allegations of this far-ranging and far-fetched conspiracy among the very upper echelon of DOCS' officials are supported by no specific facts. Complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief. *See, e.g., Brown*, 106 F.3d at 1133 (citations omitted); *Hunt v. Budd*, 895 F.Supp. 35, 38 (N.D.N.Y. 1995) (granting motion to dismiss a pro se plaintiff's claims of conspiracy and racial discrimination because "[t]he Second Circuit has repeatedly held that complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning") (citation omitted). Plaintiff's conspiracy allegations are simply insufficient to state a claim upon which relief may be granted and therefore the conspiracy claim must be dismissed in its entirety.

Additionally, the Court finds that plaintiff's allegations of a conspiracy to, *inter alia*, have him murdered are "factually frivolous" and must be dismissed. The same statute that allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* "authorizes federal courts to dismiss a claim filed *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'" *Neitzke*, 490 U.S. at 324, citing to what is now 28 U.S.C. § 1915(e).

> Section 1915[e] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suits and because of the threat of

13

> sanctions for bringing vexatious suits under Federal Rule of
> Civil Procedure 11. To this end, the statute accords judges not
> only the authority to dismiss a claim based on an indisputably
> meritless legal theory, but also the unusual power to pierce the
> veil of the complaint's factual allegations and dismiss those
> claims whose factual contentions are clearly baseless.
> Examples of the former class are claims against which it is
> clear that the defendants are immune from suit ... and claims
> of infringement of a legal interest which clearly does not
> exist.... Examples of the latter class are claims describing
> fantastic or delusional scenarios, claims with which federal
> district judges are all too familiar.

*Id.* at 327-28, 1833 (citations omitted).

> [T]he § 1915[e] frivolousness determination, frequently made
> *sua sponte* before the defendant has even been asked to file
> an answer, cannot serve as a factfinding process for the
> resolution of disputed facts. ... [A] court may dismiss a claim
> as factually frivolous only if the facts alleged are "clearly
> baseless," a category encompassing allegations that are
> "fanciful," "fantastic," and "delusional." As those words
> suggest, a finding of factual frivolousness is appropriate when
> the facts alleged rise to the level of the irrational or the wholly
> incredible, whether or not there are judicially noticeable facts
> available to contradict them.

*Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke*, 490 U.S. at 327.

Plaintiff's claims of a conspiracy among Goord, Patterson and LeClaire are the type

of "fantastic" or "delusional" allegations that warrant dismissal under 28 U.S.C.

§ 1915(e)(2)(B)(I) as factually frivolous. Moreover, while the usual practice is to allow leave

to reapplied a deficient complaint, *see* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi,*

*S.A.*, 899 F.2d 195, 198 (2d Cir. 1990), especially where a complaint has been submitted

*pro se, Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994), such leave may be denied where

amendment would be futile, such as in this case with respect to the conspiracy claims.

### 3. Excessive Force and Failure to Protect Claims

As noted above, plaintiff alleges a myriad of events that occurred at Attica, including but not limited to, assaults and rapes at the hands of other inmates, the latest rape occurring on or about January 28, 2007, and an assault by correctional officers on or about October 24, 2005, which caused two broken ribs. He alleges that all of this occurred pursuant to the conspiracy between the defendants, which claim has been dismissed, but because this Court must liberally construe the complaint, the complaint can arguably be construed as alleging excessive force and failure to protect claims against the defendants or the correctional officers who may have participated in the incidences of excessive force and failure to protect plaintiff from the assaults and rapes alleged. Additionally, plaintiff alleges that he was labeled a snitch so that other inmates would assault him, and that other inmates were informed that he was a "child molester" and rapist which correctional officials knew would cause him to be assaulted by other inmates. However, the complaint does not set forth actionable claims of either excessive force or failure to protect against the named defendants and those claims will be dismissed with prejudice unless plaintiff files an amended complaint which sets forth actionable claims against the defendants or others who were personally involved in the alleged instances of excessive force and failure to protect plaintiff from inmate assaults and rapes.

### a). Excessive Force Claims

Plaintiff's complaint alleges that the "Attica staff" broke his ribs on October 24, 2005 (Complaint, Attached pages, Statement of Facts, p. 2). He does not allege who broke his ribs or any other facts surrounding the circumstances other than it was part of the conspiracy. The standard for determining whether prison officials have violated the Eighth

Amendment by using excessive physical force was clarified by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992). According to *Hudson*, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. To assess an Eighth Amendment claim, the Court must consider both the subjective and the objective components of the alleged violations. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). The objective component considers the "seriousness of the injury." *Id.* The Eighth Amendment "excludes from constitutional recognition de minimi uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10. The subjective component addresses whether the defendant possessed a "wanton" state of mind while engaging in the use of force. *Id.* at 6-7. "Punishments 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or 'involving] the unnecessary and wanton infliction of pain' are 'repugnant to the Eighth Amendment.'" *Id.* at 10 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976).

Here plaintiff alleges no facts which would establish whether any of the defendants or the correctional officers presumably involved in the incident, applied force in a wanton or sadistic manner. Accordingly, any and all of plaintiff's excessive force claims will be dismissed unless he files and amended complaint as directed below.

b). Failure to Protect Claims

Plaintiff's alleges that he was assaulted by other inmates on a number of occasions and raped or sodomized at Attica on or about January 28, 2007 while in SHU. He also

alleges that he was labeled a snitch and that other inmates were advised of his criminal offenses which exposed him to the assaults and rape. The Court finds that these claims may be construed as Eighth Amendment claims of failure to protect and excessive force. Under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates in their custody. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Prison officials have a duty to protect prisoners from violent attacks by other inmates." *Baines v. City of New York*, No. 01 Civ.2645 P.C. GAG, 2004 WL 213792, at *6 (S.D.N.Y. Feb 05, 2004) (citing *Farmer*, 511 U.S. at 832-33). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending prison officials knew of and consciously disregarded that risk." *Baines*, 2004 WL 213792, at *6 (citing *Farmer*, 511 U.S. at 834, 837-39; *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir.1996); and *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). The standard for failure to protect claims is high. *See Rivera v. State of New York*, No. 96 CIV. 7697(RWS), 1999 WL 13240, at *8 (S.D.N.Y. Jan. 12, 1999) (citing *McGriff v. Coughlin*, 640 F.Supp. 877, 879 (S.D.N.Y.1986)).

Here, plaintiff fails to allege the circumstances under which he was assaulted by other inmates and that the defendants or some other unidentified correctional officials or officers knew of the risk to plaintiff's health and safety and disregarded it. In the absence of any allegations that the defendants or unnamed correctional officials consciously ignored a known risk of harm, plaintiff's failure to protect claims will be dismissed unless he files an amended complaint as directed below.

17

Plaintiff also alleges that he was he was identified as a snitch and a child molester and that, as a result, he was subjected to assaults and rape at the hands of other inmates. If the defendants or unnamed correctional officials or officers made statements to other inmates that plaintiff was a snitch or child molester which incited other inmates to assault plaintiff, thereby placing him at a grave risk of injury, then a claim of excessive force under the Eighth Amendment *may* be stated. *See Young v. Coughlin,* NO. 93 CIV.0262 DLC, 1998 WL 32518, at * 7 (S.D.N.Y., January 29, 1998) (correctional officers "sexually suggestive" comments to plaintiff in the presence of large number of other inmates may state an Eighth Amendment claim if they incited other inmates to assault plaintiff); *Thomas v. District of Columbia,* 887 F.Supp. 1, 4 (D.D.C.1995) (allegations that a corrections officer sexually harassed an inmate and spread rumors that he was a homosexual and a snitch stated an Eighth Amendment excessive force claim). *See also Villante v. Dept. of Corrections,* 786 F.2d 515, 522-23 (2d Cir.1986) (a guard's deliberate indifference to sexual threats and abuse of one inmate by another states a cause of action); *Mathie v.. Fries,* 935 F.Supp. 1284, 1300 (E.D.N.Y.1996). *Cf. Fischl v. Armitage,* 128 F.3d 50, 58 (2d Cir.1997).

The complaint at issue, however, does not set forth who specifically identified plaintiff as a snitch or child molester--it simply alleges that it was part of the conspiracy--, who the statements were made to or in the presence of and that said statements "incited" other inmates to assault and rape plaintiff at various times at Attica. In the absence of these basic allegations of fact, plaintiff's claims must be dismissed for failure to state a claim unless plaintiff files an amended complaint as directed below.

## B. AMENDED COMPLAINT

As directed above, plaintiff's claims of due process against Selsky ( or others who may have been personally involved in the June 19, 2006 disciplinary hearing or others in which plaintiff may claim he was denied due process, *see* n.3, *supra*), his claims of excessive force in relation to an incident on or about October 24, 2005 during which plaintiff claims his ribs were broken by Attica staff, and the claims of failure to protect and excessive force related to the assaults and rape plaintiff was allegedly subjected to at Attica will be dismissed unless plaintiff files an amended complaint by **June 30, 2007**.

The amended complaint which shall supersede and replace in its entirety the previous complaint filed by plaintiff, must contain a caption that clearly identifies, by name, each individual defendant plaintiff claims was personally involved in the alleged constitutional violations that are being dismissed without prejudice. Additionally, such complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph, and cannot exceed **15 total pages** in length. Thus, if plaintiff claims that his constitutional rights were violated by more than one defendant, or on more than one occasion, he shall include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying: (i) the alleged act of misconduct (*e.g.*, excessive force, failure to protect); (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate the location where the allege misconduct occurred; and (v) the nexus between such misconduct and the plaintiff's constitutional rights. While plaintiff may attach exhibits to the amended complaint, he shall not incorporate them by reference as

a means of providing a factual basis for his claims.  Plaintiff is cautioned that may not rely on the conspiracy claims set forth in his complaint because they are being dismissed with prejudice and that each of his claims that he is being provided an opportunity to amend must be supported by allegations of fact, and not conclusory language, which, if proven, would establish a constitutional violation.

Plaintiff must file an amended complaint no later than **June 30, 2007**.  Plaintiff is forewarned that if he fails to file an amended complaint as directed by June 30, 2007, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### C.  Motion For Appointment of Counsel

At this time, there is insufficient information before the Court to make the necessary assessment of plaintiff's claims under the standards promulgated by *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997), and *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), as there are no claims going forward at this time.  Therefore plaintiff's motion for appointment of counsel is denied without prejudice at this time.  It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*.  28 U.S.C. § 1654.

### D.  Motion for Preliminary Injunction

Plaintiff's requests that he be transferred from Attica because he claims his life is in danger as evidenced by an assault in October 2005, a "set up" in May 2006, and a rape in January 2007. (Docket No. 4).  As set forth above, none of plaintiff's claims as pled in

the complaint are going forward at this time because they are either frivolous or fail to state a claim for relief.  Accordingly, plaintiff cannot establish either a likelihood of success on the merits or the existence of serious questions going to the merits of his claim and a balance of the hardships tipping decidedly in his favor.  *See Bery v. City of New York*, 97 F.3d 689, 693-694 (2d Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997).  Plaintiff's motion for a preliminary injunction will be denied.


## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted.  For the reasons set forth above, plaintiff's conspiracy claims are dismissed (*see* Discussion, Plaintiff's Allegations, Conspiracy Claims, pp. 10-14, *supra*) , in their entirety, with prejudice.  In addition, plaintiff's complaint must be dismissed pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint by **June 30, 2007** in which he includes the necessary allegations regarding his claims of (1) procedural due process relating to the June 19, 2006 disciplinary hearing and any other disciplinary hearings at which he claims he was denied due process (*see* Discussion, Plaintiff's Allegations, Procedural Due Process Claim, pp. 5-10, and n.3, *supra*); (2) excessive force related to an October 24, 2005 incident during which plaintiff suffered broken ribs; (*see* Discussion, Plaintiff's Allegations, Excessive Force and Failure to Protect Claims, Excessive Force Claim, pp. 14-16, *supra*) and (3) failure to protect from multiple assaults and a rape (*see* Discussion, Plaintiff's Allegations, Excessive Force and Failure to Protect Claims, Failure

to Protect Claims, pp. 16-18, *supra*), as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to <u>completely replace</u> the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, *Vesco & Co., Inc. v. International Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

Plaintiff is forewarned that if he fails to file an amended complaint as directed, the complaint will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Plaintiff is further forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B). *See* 28 U.S.C. § 1915(g).

## ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff's motions for the appointment of counsel (Docket No. 3) and a preliminary injunction (Docket No. 4) are denied;

FURTHER, that plaintiff's claims regarding a conspiracy among the defendants to have him murdered, assaulted and raped, and to "set him" up, based on Goord's receipt of plaintiff's Reform Bill which accused Goord and Patterson of stealing and misappropriating millions of dollars to fund Governor Pataki's Presidential Campaign (see Discussion, Plaintiff's Allegations, Conspiracy Claims, pp. 10-14) are dismissed with prejudice;

FURTHER, that plaintiff is granted leave to file an amended complaint regarding only his claims of (1) procedural due process relating to the June 19, 2006 disciplinary hearing and any other disciplinary hearings at which he claims he was denied due process (see Discussion, Plaintiff's Allegations, Procedural Due Process Claim, pp. 5-10, and n.3, supra); (2) excessive force related to an October 24 ,2005 incident during which plaintiff suffered broken ribs; (see Discussion, Plaintiff's Allegations, Excessive Force and Failure to Protect Claims, Excessive Force Claim, pp. 14-16, supra) and (3) failure to protect from multiple assaults and a rape (see Discussion, Plaintiff's Allegations, Excessive Force and Failure to Protect Claims, Failure to Protect Claims,  pp. 16-18, supra), as directed above by **June 30, 2007**;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by **June 30, 2007**, the complaint shall be dismissed with prejudice without further order of the Court;

23

FURTHER, that if plaintiff has not filed an amended complaint by **June 30, 2007**, the Clerk of the Court is directed to close this case as dismissed with prejudice; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: MAY 22 , 2007
Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge

24